Mr. Brady, good morning to you. Welcome to the court. Good morning, your honor. Please proceed. At police accord, counsel, my name is Keith Brady. I represent the appellants in this case Orthoarm and GIC International. This is an appeal from a judgment based on a jury verdict that a self-ligating orthodontic bracket known as the Quick Bracket and sold by Forestadent USA. The question is whether the Quick Bracket has a locking recess. When you slip that clamp top in the Quick Bracket, there's no recess that it enters. There's an open space. There's not a hollow or a groove, which is what the claim construction requires. You didn't challenge claim construction, right? No, your honor. We did not challenge. So where's the hollow or groove? It just comes over a higher surface and falls into a gap. There's no hollow or groove. Your honor, if you would review the photographs that were submitted. I'm looking at them right here. And the actual evidence of the device, the hollow appears in the labial face of the bracket on the occlusal and gingival tie wings. The bracket is, you're talking the bracket is the semicircular clamp that's coming over the top, right? No, sir. The bracket is the bottom portion of the device. The part that is being, the clamp's coming over. It's the base. And then the clamp itself is what's called the locking body, the shutter or the clip, alternatively throughout the case. So when it's on a patient's tooth, it's facing this way. And so you view whether there's an indentation or hollow from this perspective as it's facing you here. Where is it? Well, if you look into the bracket, you'll see that there is a set of four ribs inside the labial face of the bracket. The testimony at trial was that that structure, those rib structures from the expert witnesses, Dr. Gerald and Dr. Sturgis, is that rib structure constitutes the locking recess of this device because it's an indentation or hollow in the labial face of the occlusal and gingival tie joints. And it's the area into which the locking body engages. But now we're dealing with a jury. A jury has made a finding of fact, because you're not challenging the claim construction. We're challenging the finding of infringement, right? That's correct, Your Honor. Well, we have to give a lot of deference to the jury's factual finding on this. How do you overcome that? Well, Your Honor, the standard of review on appeal like this is de novo. We move for judgment as a matter of law at the conclusion of the case. We filed a post-trial motion for judgment as a matter of law. District Court denied the motion. We're here on appeal from that. The Eighth Circuit standards apply. Those standards are set out in our brief. And the standard of review is de novo. So the court looks at the record and determines as a legal matter whether the evidence was sufficient to support the finding of non-infringement. The evidence can't be sufficient if it's based on speculation, conjecture. But it's not. The jury had these in their hands. They had the model. They saw demonstrations. They had vast amounts of evidence. They're not guessing. They had a lot to base their finding on. There was, indeed, a lot of evidence in the case, Your Honor. And the overwhelming evidence supported only one conclusion, that there's a locking recess in this device. If you review the record... So you're saying no reasonable jury could have reached this conclusion? That's correct, Your Honor. But a reasonable jury did. Well, we don't have to assume that that was a reasonable jury on appeal. The court's obligation on appeal is to do an independent review of the record and determine whether or not the jury was supported by substantial evidence. And it wasn't. If the court reviews the models, the testimony, the evidence of record, and I'll point you to specific portions of it in the record, it only supports one conclusion. Our witnesses, Dr. Gerald and Dr. Sturgis, testified repeatedly that the trusted-in quick bracket has a locking recess. The location of the locking recess is the area... I thought, and maybe I'm confusing this with something else, I thought your witness, Dr. Gerald, wasn't he the witness that testified, I know it when I see it, that he was unable to identify the locking recess when he was before the jury? Are you wrong about that? That's an incorrect characterization of the record, Your Honor. Dr. Gerald testified repeatedly that the locking recess is the area in the labial face of the tie wings, between the tie wings, yet above the archwire slot. His testimony appears in the joint appendix at 611 through 614, 626, 666 to 673. Is there no place in the record where he was unable to identify the locking recess or at least I know it when I see it? Well, he did make that statement, Your Honor, and in the context of the trial, there were, there was a repeated questioning of Dr. Gerald by Forestidence Council regarding the location of the locking recess. Numerous objections were made. The judge warned Forestidence Council to stop the repetitive questioning, yet he continued, and after numerous identifications, of where the locking recess was, Dr. Gerald said, referring to Justice Potter Stewart, well, I know it when I see it, but the point, the issue was opposing, Forestidence Council was asking Dr. Gerald to identify a point on the bracket, and Dr. Gerald repeatedly said it's not a point, it's an area. It's the area above the archwire slot. Into which the bracket closes. The archwire slot is defined by the four ribs on the inside on the labial faces of the bracket as you look down into the face of that bracket, so while Dr. Gerald did make that statement, that was not his testimony about where the locking recess was. He said, I know it when I see it, and sort of a flip and go. As I pointed out, the jury had a scaled model, they had a marking videotape, they had other evidence, and you're saying that on something, this is not, you know, some of our cases are arguably incomprehensible to a person of non-ordinary, not skilled in the art, but in this instance you're suggesting that they just completely overlooked or misinterpreted all of the evidence they had in front of them, including the scale, including the video. I'm saying they didn't follow the judge's claim construction on what constitutes a locking recess based on the evidence presented. The judge construed the term locking recess as an indentation or small hollow in the labial face of the occlusal and gingival tie wire. The judge specifically indicated that no particular structure was required. At claim construction, Forrestodent argued it has to be a specific structure. They referred to the specification and said there's four notches, and the four notches are what comprise the locking recess. The judge said no, it would be wrong to import that structure into the claim construction because there's a dependent claim that specifically incorporates that structure. And the judge instructed the jury as to the claim construction, right? The judge did instruct the jury as to the claim construction, and it's our view that the jury misapplied the claim construction based on the evidence before it because they were misled by arguments made during the case that a particular structure was required. Mr. Grady, if we look at the 715 patent, we see this arched wire slot, and then there's an elongated rectangular region over the top of that slot. It gives a very specific groove, hollow, recess. Where is that? What corresponds to that in the quick bracket? Well, first of all, Your Honor, nothing has to correspond to that in the quick bracket because you're looking at the structure of a preferred embodiment, and the claim of the patent is not limited to the preferred embodiment, so there doesn't have to be a structure. But the claim recites a locking recess. That's correct, Your Honor. We have in the 715 patent a very specific locking recess. We can find it. Where do we find that in the quick bracket? Well, Your Honor, we have an example of a preferred embodiment of a locking recess in the 715 patent, and I assume you're referring to figure 1, item number 48. Figure 1, figure 7, figure 8. It's there repeatedly. Right. And if you look at figures 12 and 14, I refer you to appendix 2282 and 2283, you'll see the identification of the locking recess. The ribs, the labial portions of the ribs that are facing outward on that forested end quick bracket, that's the bottom of the locking recess, and it's the area into which the locking shutter or clip closes. So as you can see... See that's the problem. Is an area a recess? Is an area a groove? Is an area a hollow recess? Well, Your Honor, it doesn't have to be a groove, first of all. It's an indentation or small hollow, not a groove. The arch wire slot, the area below the locking recess is what the party stipulated to constitute a groove, and that's the area into which the arch wire fits when it's used to... Yeah, I see that. So the locking recess was identified by the court as an indentation or small hollow in the labial faces of the bracket. If you look at the bracket in figures 12 and 14, you see that indentation or small hollow, and it's defined by the tops of those four ribs. And Dr. Gerald, Dr. Sturgis repeatedly identified this area. Mr. Vessinger, the expert witness of the forested end, identified the same area and said he wouldn't call it a locking recess. He said, yeah, there's an area above the arch wire slot into which... You have clearly an arch wire slot, but you don't have a separate locking recess, do you? Well, we do have a locking recess, Your Honor, and again, it's defined by the tops of the four ribs, the labial faces of the four ribs, and the locking shutter, the clip, closes into that area and rests on those ribs, as you can see from looking at the bracket as in the briefs. So we think the evidence was more than sufficient. Mr. Vessinger himself made admissions during his own testimony and said, yeah, there is an area above the arch wire slot where the locking recess or the locking body or shutter clip closes into. The purpose of doing that is to retain the arch wire in the slot. It operates in exactly the same way, and it's set forth in our brief. I think there's page 14 of our reply brief. There's an indication of exactly where Mr. Vessinger admitted that there's a space between the occlusal and gingival tie wings, and there are references to the record to support that. Your Honor, how does functional comparability translate into infringement in a case where the claim is drawn to structure? Well, it's not, I'm not arguing that functional comparability constitutes the existence of a locking recess, Your Honor. We've identified the specific area on the bracket, how it's defined. Our expert witnesses testified to that effect. The other side's expert witness indicated, yeah, this is where the slot closes into. He refused to call it a locking recess. He said it's all the arch wire slot. Their argument is there's the only space in between the tie wings is the arch wire slot, but yet they recognize that the arch wire slot is limited by the ribs, the labial faces of the ribs, and that the shutter closes into an area above that arch wire slot. So even Forestident's own witnesses recognize the existence and the bracket, and essentially said, well, yeah, there's a different space, but we won't call it a locking recess because that would hurt us. And so we're asking you to look at the record, review it, and recognize that the evidence was overwhelming in support of a finding, a locking recess, or in the alternative, we're seeking a new trial because the evidence, again, was overwhelming, and because of the imputation of structure and the departure from the district court's claim construction that occurred during the course of trial. Do you want to save any rebuttal time? I would like to save the balance of my time for rebuttal. Thank you. Mr. Whitmer. Thank you, Your Honor. If it may please the court, unless the court has substantial questions, all I intend to say is that the jury did have the evidence of the accused device. It had the claim construction that the court gave, and it had the stipulated definition of what the archwire slot was, and the argument was, what do you see here? Is it the opening or groove into which an archwire comes, or is there a small hollow, an indentation or small hollow, which is the locking recess? We argued that the only thing that one saw was the archwire slot, and there was no indentation or small hollow. These are reasonable inferences which the jury resolved, finding in favor of precedent, and there is not my judgment, and I urge this court to affirm on that basis. Do you understand the claim limitations of this patent to call out four labial faces? Well, I have it to call out a labial face. There are tie wings that are found in the labial face, the labial face obviously meaning that which faces the lips. So that, as I understand it, there is a labial face. I thought the claim called for a set of at rings, and therefore there would have to be four portions of the labial face that have this indentation. Is that not right? Well, as I understood it, your honor, the court's construction of locking recess was really the only thing we litigated, because a bracket is a bracket, so it is the way we looked at this, that it had to have a small indentation or small hollow. I always put the adjective in the wrong place. My question to you is where does the hollow have to be located? Does it have to be on both sides, or is it sufficient for infringement if it's only on the left-hand side? No, I think, your honor, that the locking recess, as I recall, I don't have the figures in front of me, but I think that there is at least two locking recesses in most of the figures. As I understood it, I don't know that I ever understood a specific number to where there had to be a locking recess which was capable of receiving the shutter. The word engage was defined by come into or fit into or come into. We argued consistently that there was in this bracket no small hollow or indentation, but rather the only thing that was received. Your argument is that there's nothing that is an indentation in either half, but my question is whether indentations aren't required in both halves under the claim line. They probably are, your honor. They probably are. Certainly, I think that's the teaching in the specification. I don't know that we litigated, I'm fairly confident we didn't litigate that issue in claim construction specifically, but I think the specification certainly doesn't contradict your honor's view of that. I think it's consistent with what the specification teaches, but we argue we don't have any small hollow or indentation. That's what Mr. Wessinger said. He said, of course there's an area above those ribs because that's just a matter of physicality, but that's part of the arch wire slot and there's no small indentation or hollow. Did your arguments to the jury and the jury's finding inappropriately limit this claim to a preferred embodiment in a 715 patent? No, it did not. One of the ways I can say that with this confidence is that I didn't put up the patent figures and say, look at this patent figure and see what they've got here. I held up consistently what I'm holding up in this courtroom, which is an example of what was marked as Exhibit C. That's the quick bracket. The quick bracket. I held up the accused device. We ran an animation, which came from Foreskin, but had been admitted into evidence by the plaintiff as a plaintiff's exhibit that showed how the quick bracket worked. That's what we had on the disc, right? That's correct. That's correct. That showed how the quick bracket worked. We had the photographs, which I think, Judge Rader, you were looking at before, because what I'm holding is, I think, a 20 times bracket size. If you had the actual bracket, you couldn't see it. It's a big tooth there, isn't it? Yes. I always said that this is a dinosaur's orthodontic, but the point was that I wasn't saying compare the pictures of the 715 patent with this. It was purely a literal infringement case, no doctrine of equivalence. I said, you've got this, you've seen it, compare it to the patent, and come to the conclusion, and I urge you to do, that there is no small indentation or hollow. In point of fact, Your Honor, when Dr. Gerald said, well, I can't define it, but I know it when I see it. This is one of those cases. This was as a result of my questioning him, not as Mr. Grady characterizes it, but saying, where is the small hollow? Where's the indentation? Where is that area? Where does it start? Where does it end? An indentation or a hollow ought to be something you could see. But the judge had told you it isn't a structural issue. That sounds like you're pushing structure on the jury. No, I wasn't. I was trying to have him to say what the indentation was. Ultimately, he paraphrased Justice Stewart with respect to pornography in this patent case. My view with respect to what happened with the jury was that they heard the testimony. This is not the kind of methods patent claim where the only evidence that can go before the jury is conflicting testimonial evidence as to what happens in the method or what's going on at some atomic, subatomic level or molecular level. But rather, we're talking about a device, a piece of physical device that can be looked at. So in your view, the jury could have relied solely on the enlarged model of the accused product on the one hand and the claim construction on the other hand. That would have been sufficient. Well, I guess, Your Honor, I actually think it would have been because in one sense, Mr. Grady could have come in and said, here's the model, which we conceded. This was stipulated. This is 20 times the actual model. So you look at this. And here's the patent. And here's the claim construction. Now, we did have Mr. Wasinger's testimony that said there was no small indentation or indentation. The jury had the video, which you've seen on the desk. And it had the photographs. So it could inspect this. It could look at the accused device and take the claim construction. And the claim construction was their claim construction. The reason they don't challenge it is because it was their claim construction with respect to the locking recess. I had argued that the locking recess should have a definition that embodied some concept of locking. But I lost. Ultimately, I stipulated to the archwire slot definition, which I again quoted verbatim to the jury. I said, look at the accused device. Take the patent. Take the judge's instructions. Here's the stipulation. Here are the terms that I think are most relevant, namely I think it was stipulation 23, which was the archwire slot, which is an opening groove or channel that is capable of receiving the archwire. That's what's here. It's not a locking recess. And the jury went out. The only piece of evidence they asked for, they had physically inspected the models and had seen models in the courtroom, had seen all this. And they asked for the patent. They took the patent and came back with a verdict. I think it is under Eighth Circuit law. It is quintessentially the jury's function to resolve these differences. It did. And I understand Mr. Grady's position. I made a mistake because he lost. I've been there. I understand that. But affirmance is the appropriate relief here and I asked for that. Thank you. Mr. Grady. I'd like to address Judge Rader's question about structure. I'd like to direct your attention to the opening statement where Mr. Whitmer said this is not about whether it holds an archwiring in place. It's about the structure of the product. That's at A496, A499. This is a patent. This is about what the structures are. In the cross-examination of Edward Murrell, our first witness, Mr. Whitmer says claims 1, 3, and 12 are about structure. Correct, Mr. Murrell? In the cross-examination of Dr. Gerald, A643 to A645, again, locking recess is a structure. Correct? It's the notch. It's the structure. Repeatedly refers to the preferred embodiments of the patent during the cross-examination at 657 and 659. What's your point? I'm not following. The point is that precedent's argument repeatedly was there has to be a specific structure that the locking recess is. What's wrong with that? It's inconsistent with the court's claim construction. Well, maybe. It's not so clear to me what the court meant when the court commented about structure or being important here or not being important, but it seemed to me as a matter of common sense that the claim term recess has to be at some level about geometry. It has to be a place. It does have to have a start and a finish and some sort of dimensionality to it. You can have a semantic argument, I suppose, about whether that's really structure or not really structure, but it has to have dimensions to it or you can't tell whether it's there or not. You can clearly see where the recess is in the precedent quick bracket. It's at the tops of those four ribs. Your Honor, you asked a question about whether there had to be more than one recess. The claim calls for a locking recess in the labial faces of the bracket. That's claim one, column 16, line 57. I thought it also called for a set of wings, of at least two wings. That's correct. There's two tie wings on the, at least two tie wings because they call this a twin tie wing bracket, but if you look at figure one of the patent, you'll see the locking recess is depicted as the area 48 between the two tie wings. That's the area into which the clip closes and clearly is the area that's found on the precedent quick bracket. If you refer back to that, you'll see the location of the locking recess as that area into which the clip closes above the arch wire slide. We have the same thing here. We'd ask that the court reverse the district court's decision to deny our motion for judgment as a matter of law. All right. Thank you both. We'll take the appeal under advisement. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock.